**GENERAL INSTRUMENT CORPORATION, Plaintiff,**

v.

**GENERAL DIODE CORPORATION, Defendant.**

**Civ. A. No. 65–902.**

United States District Court
D. Massachusetts.

Sept. 14, 1966.

Jerome Medalie, Cohn, Riemer & Pollack, Boston, Mass., for plaintiff.

Thomas J. Ahern, Jr., Boston, Mass., for defendant.

## MEMORANDUM

GARRITY, District Judge.

Plaintiff has filed a motion for production, inspection and copying under Rule

34, requesting an order directed in part to three categories of the defendant's books and records. At the hearing the defendant assented to the motion with respect to two categories but opposed production of the third, which covers its direct and indirect costs of manufacturing certain materials which it sold to the plaintiff.

The complaint alleges that in 1964 the plaintiff purchased from the defendant certain polycrystal ingots, for which it paid approximately $12,800, and that on discovering that the ingots did not meet certain specifications returned them to the defendant for credit, and the defendant has refused to refund the amount paid. The pertinent purchase orders provided that, if specific ingots did not meet with the plaintiff's approval, they might be returned to the defendant for credit. In a second count the plaintiff alleges breach of an express warranty. In its answer the defendant admits receiving payment, the return of the goods to it and retention of the $12,800, but alleges that the goods did meet specifications and denies any breach of warranty. The answer also sets up as the "Third Defense" the affirmative defense of accord and satisfaction and includes a counterclaim.

The books and records whose production is at issue are sought by the plaintiff because of the defense of accord and satisfaction. They are described in the plaintiff's motion as follows:

(c) All books, records and documents showing or relating to the direct and indirect costs to the defendant of manufacture, sale and shipment to the plaintiff of silicon ingot polycrystals during the defendant's fiscal years commencing with April 1963 and ending with April 1965, including, without limitation, the following books, records and documents: (1) all costs accounting reports and analyses; (2) all profit and loss and balance sheet statements; (3) all original bills and canceled checks in payment therefor; (4) all check book stubs; (5) all payroll records; (6) all tax returns filed with the State and Federal Governments; (7) all general and special ledgers; (8) all journals from which the general and special ledgers were prepared.

It was stated by defendant's counsel at the hearing, and not disputed by plaintiff's counsel, presumably on the basis of a deposition of an officer of the defendant corporation already taken, that the defendant has no cost accounting reports and analyses—item (1) in subparagraph (c) of the plaintiff's motion. It does, however, have the other types of books and records of which discovery is sought. What the plaintiff evidently seeks to accomplish by inspecting the available records of the defendant is to make its own analysis of the defendant's costs of manufacturing, selling and shipping polycrystal ingots.

In its "Third Defense" the defendant alleges that the plaintiff initially sought to return the polycrystal ingots for a cash credit of $12,800, but the defendant refused to accept a return of the goods on that basis, claiming among other things that they met the contract specifications. After negotiations the defendant agreed to take back the goods as the basis of a merchandise credit and agreed to deliver substituted polycrystals upon receipt of shipping instructions from the plaintiff. The plaintiff, defendant alleges, has refused to issue instructions, although the defendant has been and is still ready to deliver substituted goods.

The defendant's costs would become relevant, in the plaintiff's view, if the defendant should succeed in establishing an accord and satisfaction and if the plaintiff can disprove the defendant's alleged readiness to furnish substituted goods and prove that the defendant could not supply usable polycrystal ingots to the plaintiff. The plaintiff argues, in an affidavit of its counsel of record attached to its motion as Exhibit "A", that on the stated assumptions the plaintiff would be entitled to damages equal to the defend-

ant's cost of manufacture, sale and shipment, else the defendant be unjustly enriched to that extent. The defendant contends that its retention of the $12,800 would not be unjust should the Court find that plaintiff has frustrated the new accord and that, in any event, costs reconstructed by the plaintiff from the defendant's general books and records would be irrelevant and too speculative to be admissible in evidence. The defendant has not opposed the motion on the ground that trade secrets or other confidential information would be revealed.

 Preliminarily, it is well settled that discovery is as appropriate with respect to a plaintiff's damages as it is with respect to other issues in a case. Dysart v. Remington Rand, Inc., D.Conn. 1938, 25 F.Supp. 293, 295. Previous to adoption of the Federal Rules of Civil Procedure, a separate bill of discovery would lie though the facts to be discovered related to damages only. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 693, 53 S.Ct. 736, 77 L.Ed. 1449 (1933). Discovery would be granted not as of course but as a matter of sound discretion. Id., at 696–697, 53 S.Ct. 736.

Several factors militate against production. One is the breadth of the plaintiff's motion, embracing for the two-year period specified every type of financial record of the defendant, including check book stubs, payroll records and tax returns. Another is the doubtful relevancy of evidence of the defendant's costs—it is at best doubly conditional. Whether the evidence at the trial will prove an accord and satisfaction is impossible to predict at this stage. Sometimes a new promise may itself supplant the obligation under the original contract, e. g., Tuttle v. Metz Co., 229 Mass. 272, 273, 118 N.E. 291 (1918). On the other hand, the original contract may be intended by the parties to remain in force until performance of a new promise has been completed, e. g., Zlotnick v. McNamara, 301 Mass. 224, 16 N.E.2d 632 (1938). A further condition to the relevancy of the documents sought

by the plaintiff is its ability to demonstrate, contrary to the defendant's pleading, that the defendant could not deliver usable merchandise. The plaintiff has made no factual showing or offer of proof to this effect. Thirdly, as argued by the defendant, the plaintiff has not shown any real likelihood that it will be able to reconstruct the costs of the defendant company, a formidable challenge even when a company's own accountants are attempting it, from the type of books and records sought in its motion.

On the other hand, the proof at trial may develop as the plaintiff anticipates: a proper foundation for the admission of evidence of the defendant's costs may be laid and the best evidence may be an expert witness' analysis of the defendant's books. Any attempt to reconstruct costs from raw records seen for the first time on the witness stand would be doomed from the start. Even the relative calm of an accountant's office would be no guarantee of success. But the plaintiff is willing to incur the expense and is entitled, in my opinion, to make a try.

 To deny the plaintiff's motion would in effect preclude the plaintiff from introducing evidence of the defendant's costs at the trial on the issue of damages. The court should not attempt on a motion for discovery to fix the rule for measuring the damages, except on the clearest case, Brockway Glass Co. v. Hartford-Empire Co., W.D.N.Y., 1942, 2 F.R.D. 267, 269, which this case is not. The court will not now resolve the question of the measure of damages, but will leave it for the trial.

 The plaintiff's motion is allowed as to the journals, ledgers and other bookkeeping and accounting records described in subparagraph (c) (1), (2), (5), (7) and (8). The plaintiff has not shown good cause for the production of original bills, canceled checks and other cumulative materials described in subparagraph (c) (3), (4) and (6), and as to them the motion is denied.